J. W. TRUTCH, APPELLANT, v. D. D. BUNNELL, GUARDIAN OF MEZALDUS, FRED., MALVERN, OCEANA, AND ROBERT SCOTT AND OTHERS, MINORS, RESPONDENTS.

GUARDIAN MAY MORTGAGE WARD'S ESTATE. — Under subdivision 6, § 869 of the Civil Code, which confers upon County Courts jurisdiction "to order the renting, sale, or other disposal of the real and personal property of minors," the County Court is authorized to order the mortgaging of a minor's real estate.

IDEM—MANNER IN WHICH NOTE AND MORTGAGE MAY BE EXECUTED.—In proceedings to foreclose a mortgage against a minor's real estate, the fact that the note and mortgage sued upon are not executed by signing the minor's name thereto, but by signing the name of the guardian as such, is no defense.

ADVERSARY PARTIES—WHEN MINORS ARE NOT.—In proceedings before the County Court, by a guardian, to obtain an order to sell or mortgage the estate of minors, such minors are not adversary parties to their guardian, but they appear by him, and the proceedings are upon their application.

APPEAL from Multnomah County.

This is a suit to foreclose a mortgage for twelve thousand dollars in gold coin, executed by D. D. Bunnell, as guardian of certain minors, against the real estate of such minors. The mortgage was executed in pursuance of an order of the County Court, duly made. The court below dismissed the appellant's complaint on the ground that the County Court had no authority to order the mortgaging of a minor's estate.

*Page, Yocum & Robb*, for Appellants.

*C. Beal, guardian ad litem, and counsel*, for minor Respondents.

By the Court, BONHAM, C. J.:

The appeal in this case presents, for the consideration of this Court, two principal questions. First. Do the statutes of Oregon invest our County Courts, sitting in probate, with authority to order the mortgaging by a guardian of the real estate of his ward. Second. If such power is vested in the County Courts, does the record evidence in this case, offered by appellant, show that the County Court of Multnomah County had acquired jurisdiction to make the order authorizing Bunnell, the guardian of the minor respondents, to mortgage the real estate in question.

The first proposition we think only necessarily involves the construction of certain provisions of our statute defining and limiting the jurisdiction of County Courts and declaring the duties of guardians. Section 869 of the Civil Code declares that "the County Court has the exclusive jurisdiction in the first instance pertaining to a court of probate, that is, * * * * Subdivision 6. To order the renting, sale or other disposal of the real and personal property of minors."

It was suggested by the guardian *ad litem* of the minor respondents, on the argument of this cause, that the provisions of § 869 above referred to were simply abstract declarations of the jurisdiction of the County Court and ought not to be regarded as operative and effective law without further and more specific legislation on the subject. This position we do not think is tenable. While it is true that the statute defining the duties of guardians of the persons and estates of minors makes no reference to the particular manner of proceeding by the guardian to procure an order of the County Court for leave to mortgage his ward's real estate, yet we think the law on this subject, taken altogether, is sufficiently explicit to point out with reasonable certainty the proper manner of proceeding in such a case. The proceedings by Bunnell, the general guardian in this instance, was properly had in analogy to the manner of proceeding provided by chapter 51 of the Miscellaneous Laws to obtain a license to sell the real estate of a minor.

Counsel for appellant in this case urged upon the argument that in addition to the direct authority to mortgage, embraced, as they claimed, in the words "or other disposal," as contained in subdivision 6, § 869 of the Civil Code, the authority there expressly given to sell by necessary implication or fair intendment carried with it the power to mortgage. It was claimed that the power to make an absolute alienation of the fee ought to authorize a conditional sale by mortgage. (Willard's Eq. Juris. 486; 2 Story's Eq. Juris. § 1064; *Palmer* v. *Forbes et al.*, 23 Ill. 318; 2 Bouv. Inst. 345; Am. Law Reg. 1869, 490; *Lancaster* v. *Dolan*, 1 Rawle, 248; *Pitcher* v. *Carter*, 4 Sandford (N. Y.) Ch. 1.) But the authorities upon this subject are not uniform, and we do not deem it necessary for the purposes of this case to pass upon this question, since we conclude that subdivision 6 of § 869 of the Civil Code, which empowers the County Court to order the renting, sale *or other disposal* of the real and personal property of minors, must necessarily embrace the authority to mortgage. To give effect to all the language of the statute, the words "other disposal" must necessarily be construed to mean something other than to rent or sell; and we do not think it could more reasonably be construed to apply to any other change in the condition of the realty of the minor than that which would result from mortgaging the same.

And while it is true that the persons and property rights of minors, who, by reason of their tender age, are incapable of looking after their own interests, should be carefully watched, guarded and protected by the courts intrusted with that important duty, yet it is easy to conceive of many cases which might arise where it would be greatly to the interests of the minor to have his real estate mortgaged for a time rather than be compelled to part with the title altogether. The facts in this case, as disclosed by the pleadings and testimony, render it very probable that it was much better for the pecuniary interests of these minors that their guardian, under the authority and supervisory control of the County Court, should have secured the loan and executed the mortgage in question. It is shown by the

testimony that the buildings upon the lots mortgaged—the lots being lots 1, 2, 7 and 8, in block 8, in the city of Portland—were wholly destroyed by the great fire of August 2, 1873, and that the sidewalks were also destroyed, and that this property, which was favorably situated in the business part of the city, was thus left not only wholly unproductive, but subject to assessments for the rebuilding of the sidewalks abutting thereon.  By mortgaging these lots, funds were secured to rebuild upon them, and thus render them again productive.  We mention the facts in this case, as disclosed by the order of the County Court, licensing the guardian, Bunnell, to mortgage the premises in question, not because the merits of said guardian's application for such order is a subject for review here, but simply to illustrate the necessity of the power in the County Court to authorize the mortgaging of the real estate of minors under such circumstances.  We think it must have occurred to the minds of the Legislature, when they were authorizing the renting and sale of the real estate of minors, that it might also become necessary under certain circumstances to mortgage the same, and that they had this in mind when they added the words, "or other disposal," to the language of the statute above quoted.

This brings us to the consideration of the second proposition, as to whether the record evidence offered by appellant before the referee in the court below, is sufficient to show that the County Court acquired jurisdiction to make the order authorizing the general guardian of the minor respondents to mortgage the lots in question.

The minor respondents herein, by Mr. Beal, their guardian *ad litem*, after denying all the material allegations of the complaint, by suggesting a lack of knowledge, or information sufficient to form a belief, and for the protection of such minors demanding proof, allege as new matter, and as a further and separate answer and defense:

"1. That said pretended note and mortgage, set out in the complaint, was made and executed by one D. D. Bunnell, who claimed to be the guardian of these minors, in his own name; that said pretended note and mortgage are

not made or executed in the name of the minors; that the execution of said note and mortgage is not the act of these minors, and that they are therefore not liable thereon.

"2. That the proceedings to obtain said pretended order for the making of said note and mortgage, were not made adversary; that no notice was served on these minors of the application of the same; that for the aforesaid and other reasons, the court had no jurisdiction of these minors, and that said pretended order was void and of non-effect."

The third and last count in the new matter pleaded as a defense, denies the authority of the County Court in any event, or under any circumstances, to make an order for the mortgaging of a minor's real estate, and embraces the objection interposed by the guardian *ad litem*, already passed upon.

As to the objection that the note and mortgage sued upon were signed by one D. D. Bunnell, professing to act as guardian for the minor respondents, instead of signing the names of his wards by himself as their guardian, we think at most it could only be regarded as an irregularity which could not vitiate the transaction, as it is substantially and in effect the same, whether the guardian of these minors signed his own name to the note and mortgage in his official capacity as such, or signed the names of his wards by himself as their guardian.

The only other objection interposed by the guardian *ad litem* to appellant's right to a decree of foreclosure, is, that the proceedings of Bunnell, as general guardian of the minor respondents, before the County Court, was not made adverse to such minors, and that no notice of the application for leave to mortgage said lots was given to said minors. We do not think that the wards of a guardian, in a proceeding like this, are adversary parties to their guardian; but that they appear by their guardian.

In the case of *Mason* v. *Wait et al.* (4 Scammon, Ill.), the court upon this subject say: "It was not necessary that the ward should have a day in court. The proceeding was not adverse to her interest nor against her. It is her own application, by her legally constituted guardian. She is in court

by her guardian.   No summons to her was necessary, nor could she have any other day or guardian *ad litem* in court, unless upon suggestion as *amicus curia* it should appear that the guardian was about to abuse the trust, or was seeking power to injure and misapply the estate.   I think it altogether an erroneous view of such cases to regard them as proceedings against the heir to divest her of her interest or property.   It is an application by her, or on her behalf, for power and authority to do acts for her benefit and interest. The law, however jealous it may be of the conduct of guardians, or watchful of the interests of wards, would never tolerate the absurdity of appointing a guardian for infants, incapable of consenting or acting for themselves, and then treat every act of such guardian, in disposing of the ward's property and managing the estate, as a proceeding against the ward to deprive her of her property."

The decree of the court below should be reversed, and a decree of foreclosure, in accordance with these views, entered.